**THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY and WASTE MANAGEMENT, INC., Plaintiffs,**

v.

**SOUTHEASTERN REFRACTORIES, INC., Defendant.**

**No. 3:00–CV–3334 GLG.**

United States District Court, D. Connecticut.

Jan. 10, 2003.

Ernest J. Mattei, Day, Berry & Howard, Ronald E. Lyles, Travelers Property Casualty Commercial Lines Law Dept., Hartford, CT, for plaintiffs.

John J. Bogdanski, Howd & Ludorf, Hartford, CT, Claudia A. Baio, Andrew M. Dewey, Baio & Associates, Rocky Hill, CT, for defendant.

### OPINION

GOETTEL, District Judge.

Pending before the Court is Plaintiffs' Renewed Motion to Reconsider the Endorsement Order Dated September 4, 2002 and the Judgment for the Defendant Dated September 6, 2002 [Doc. # 39]. For the reasons set forth below, this motion will be denied.

### Background

On February 22, 2000, plaintiffs, Hartford Steam Boiler Inspection and Insurance Company and its insured, Waste Management, Inc., filed this subrogation action against defendant, Southeastern Refractories, Inc., to recover losses sustained when a boiler was severely damaged at Waste Management's facility. Due to the insolvency of defendant's insurer, Reliance Insurance Company, and an intervening order of liquidation entered by the state court in the rehabilitation proceedings, this action was stayed for approximately one year.

On June 10, 2002, defendant filed a motion to dismiss the instant action. Plaintiffs' opposition to the motion was due 21 days thereafter. D. Conn. L. Civ. R. 9(a)1. On July 11, 2002, (which was ten days after the due date),[1] plaintiffs sought an extension of time to July 25, 2002, to respond to the motion, which extension was granted "on consent." On July 25, 2002, plaintiffs filed a second motion for an extension of time to respond, until August 26, 2002, which again was granted with the consent of defendant's counsel. On September 4, 2002, having received no opposition from plaintiffs, the Court granted the motion to dismiss in the absence of opposition. Judgment for the defendant was entered on September 6, 2002.

On September 11, 2002, plaintiffs filed a motion for reconsideration of the Court's endorsement order of September 4, 2002, and the judgment dated September 6, 2002. This motion was denied without prejudice to plaintiffs' filing a new motion supported by a sufficient affidavit establishing excusable neglect in failing to oppose a motion filed several months earlier, despite the requested extensions. Accordingly, on October 9, 2002, plaintiffs filed a renewed motion for reconsideration with an accompanying affidavit of Ernest J. Mattei, Esq., counsel for plaintiffs.

In his sworn affidavit, Attorney Mattei states that the non-filing of opposition to

---

1. It appears that this late filing was the result of plaintiffs' counsel's failure to supply his federal bar number on his original motion, which was returned by the Clerk's Office for failure to comply with Local Rule 6, D. Conn. L. Civ. R.

defendant's motion to dismiss was "inadvertent and the result of mistake on [his] part." (Aff. ¶ 5.) The associate, who had been working on the case with him and who had been primarily responsible for the day-to-day management of the case, left the firm on April 26, 2002 (which the Court notes was a month and a half prior to the filing of the motion to dismiss). (Aff.¶ 6.) Attorney Mattei asked a summer associate to prepare an appropriate opposition brief for his review. The summer associate left on August 9, 2002, at which time Attorney Mattei was on vacation. (Aff.¶¶ 8, 9.) Upon his return, he "neglected to realize that the brief in opposition to defendant's motion to dismiss had not been completed by the extension date." (Aff. ¶ 10.) He did not become aware of this until he received the order entering judgment for the defendant, after which he filed the instant motion. (Aff.¶ 11.)

### Discussion

Plaintiffs ask this Court to reconsider its ruling of September 4, 2002, to vacate the judgment of September 6, 2002, and to allow plaintiffs to file opposition to the motion to dismiss, pursuant to Rule 60(b)(1),[2] Fed. R.Civ.P., and Rule 9 of the Local Rules of Civil Procedure, "in the interest of justice" and because their failure to file was due to "excusable neglect."

The decision as to whether relief should be granted under Rule 60(b) is committed to the sound discretion of the Court. *Securities and Exchange Commission v. McNulty*, 137 F.3d 732, 738 (2d Cir.), *cert. denied*, 525 U.S. 931, 119 S.Ct. 340, 142 L.Ed.2d 281 (1998); *National Petrochemical Co. v. M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir.1991). In

this case, there is no question that plaintiffs' counsel's failure to file opposition to the motion to dismiss was due to "neglect."[3] The issue is whether that neglect is "excusable." We find that it is not.

As plaintiffs correctly assert, the Supreme Court, in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 387–96, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), liberalized the "excusable neglect" standard in Rule 60(b)(1) and held that attorney negligence or carelessness *may* constitute excusable neglect under appropriate circumstances. In *Pioneer*, the Court rejected the holdings of several circuits, including the Second, that the excusable neglect standard could be met only if a party's failure to timely perform was due to circumstances beyond its reasonable control. Instead, the Court held,

> [a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" ... is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant.

*Id.* at 392, 113 S.Ct. 1489. The Court concluded that, because Congress had provided no guideposts for determining what sorts of neglect will be considered "excusable," the determination was "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. 1489. These circumstances include "the danger of prejudice to the [defendant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it

---

**2.** Rule 60(b)(1), Fed.R.Civ.P., provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment.

The portion of Local Rule 9 cited by plaintiffs provides:

> Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the

pleadings provide sufficient grounds to deny the motion.

**3.** The Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), employed the definition of "neglect" in *Webster's Ninth New Collegiate Dictionary* 791 (1983), " 'to give little attention or respect' to a matter, or ... 'to leave undone or unattended to esp[ecially] through carelessness.' " (Original emphasis). "The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.*

was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.; see also Bateman v. United States Postal Service,* 231 F.3d 1220, 1223–24 (9th Cir.2000).

 As the Supreme Court held in *Pioneer,* "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." 507 U.S. at 392, 113 S.Ct. 1489. We are thus faced with the question of whether this is a case in which the circumstance warrant a finding of excusable neglect. Clearly, the reason for the failure to file was wholly within the control of plaintiffs' counsel. Plaintiffs' counsel was aware that the a motion to dismiss had been filed, and he himself requested two extensions of time to oppose the motion. Both of these requests were granted. The deadline for plaintiffs' opposition was the date specifically requested by plaintiffs' counsel. It was not a date set by the Court. It was not a date calculated based upon an ambiguous federal or local rule or statute. *See Canfield v. Van Atta Buick/GMC Truck,* 127 F.3d 248, 250 (2d Cir.1997)(suggesting that neglect may be excusable where the language of a rule is ambiguous or susceptible to multiple interpretations, or where an apparent conflict exists between two rules), *cert. denied,* 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 117 (1998). Plaintiffs' counsel assigned the work to a summer intern, and he was the person who failed to monitor the deadline. His justification for failing to adhere to this deadline is no more excusable (indeed, we believe even less excusable) than the attorney in *Canfield* who failed to read and obey an unambiguous court rule setting forth the deadline for a response to a motion for summary judgment. *See Canfield,* 127 F.3d at 251. In that case, the Second Circuit affirmed the district court's denial of relief under Rule 60(b), Fed.R.Civ.P. *Id.; see also 12 Moore's Federal Practice* § 60.41[1][c][ii] (3d ed.2002) (stating that inadvertent conduct that does not demonstrate diligence is not excusable and citing as examples the failure to meet a deadline without some understandable excuse for the tardiness, mistakes resulting from lack of "quality control" type of procedures, or simple carelessness).

As to the considerations of prejudice and the length of the delay, defendant would be deprived of a victory, which is certainly prejudicial, but generally a victory of such short duration has not been regarded as sufficient to justify denial of relief under Rule 60(b)(1). *See Bateman,* 231 F.3d at 1225. By the same token, an absence of prejudice does not in and of itself entitle plaintiffs to relief. *See SEC v. McNulty,* 137 F.3d at 738. Additionally, we find no evidence of bad faith on the part of plaintiffs' counsel.

On the other hand, were we not to require some justification for counsel's neglect, we would essentially eliminate the requirement of *"excusable"* neglect from Rule 60(b)(1) and would eviscerate the filing deadlines of the Federal and Local Rules. Certainly, this is not the result intended by the Supreme Court in *Pioneer,* which recognized that the "excusable" portion of the "excusable neglect" standard provides the limitations necessary to prevent abuse by the parties. *Pioneer,* 507 U.S. at 395, 113 S.Ct. 1489; *see also Canfield,* 127 F.3d at 250.

The Second Circuit has held that the reason for the delay is the "most prominent factor" and should be given particular weight in the analysis. *See Mason v. Schriver,* No. 96 Civ. 6942, 1999 WL 498221, at *2 (S.D.N.Y. July 13, 1999) (citing *United States v. Hooper,* 43 F.3d 26, 28 (2d Cir.1994) (holding that a legal assistant's ignorance of the rule establishing a deadline for filing criminal appeals did not constitute "excusable neglect" justifying the late filing of an appeal), and *Weinstock v. Cleary, Gottlieb, Steen & Hamilton,* 16 F.3d 501, 503 (2d Cir.1994)(holding that the failure to follow the plain language of the rule regarding time for filing a notice of appeal did not constitute excusable neglect)).

> The Court of Appeals has interpreted this factor strictly, delineating a standard that will not be satisfied by a simple failure to follow the rules. The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.

*Id.* (internal citations and quotation marks omitted). "[W]here the rule is entirely clear,

a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Id.* (citing *Canfield,* 127 F.3d at 251). Here, it was not a rule but counsel's own requested deadline that was not met. Plaintiffs' counsel has not demonstrated *excusable* neglect in failing to meet this deadline, his own deadline, that was clear and unambiguous. Sheer oversight is not *excusable* neglect. *See Carcello v. TJX Companies,* 192 F.R.D. 61 (D.Conn.2000)(holding that plaintiff's failure to file timely opposition to a motion to dismiss did not constitute excusable neglect); *but see Yanusis v. Landry's Seafood, Inc.,* No. 3:00CV1742, 2001 WL 1094979 (D.Conn. Sept.7, 2001)(granting relief under Rule 60(b)(1) 'where plaintiff's counsel failed to respond to a motion to dismiss on the mistaken belief that the court would first rule on a motion for reconsideration).

Plaintiffs also urge this Court to vacate its earlier rulings based upon the Second Circuit's policy favoring adjudication on the merits of motions filed pursuant to Rule 12(b)(6), Fed.R.Civ.P., citing *McCall v. Pataki,* 232 F.3d 321 (2d Cir.2000), and *Amaker v. Foley,* 274 F.3d 677 (2d Cir.2001). In this case, defendant's motion to dismiss was filed pursuant to subsections (1) and (6) of Rule 12(b). The basis for defendant's motion was that, under the Uniform Insurers Rehabilitation and Liquidation Act, adopted by both Connecticut and Florida (the state of defendant's domicile), subrogation claims cannot be pursued against the insured of an insolvent insurer. Therefore, defendant argued that this Court lacks subject matter jurisdiction over this subrogation suit or, alternatively, plaintiffs' complaint fails to state a claim upon which relief may be granted.

Plaintiffs assert that, although framed as a motion asserting lack of subject matter jurisdiction, the motion should be construed as seeking relief pursuant to Rule 12(b)(6) or Rule 56. (Pls.' Mem. at 4, n. 1.) Whether viewed as a motion to dismiss under Rule 12(b)(1) or 12(b)(6), the instant motion is in a far different posture than the motions in *McCall* and *Amaker,* which involved dispositive motions in section 1983 cases filed by *pro se* prisoners. In both cases, the Court counseled that the actions should not have been summarily dismissed by the district courts without a consideration of whether the *pro se* complaints stated a claim for relief under section 1983. In the instant case, the question is not whether plaintiffs' subrogation complaint states a cognizable substantive claim, but whether that claim can be maintained against a defendant whose insurer is insolvent. Little, if anything, would be gained from our review of the complaint on the issue presented by the motion to dismiss which challenged our jurisdiction and raised the issue of whether this suit can be maintained under the Uniform Insurers Rehabilitation and Liquidation Act. This is not a case where the pleadings provide sufficient grounds to deny the motion to dismiss. *See* Rule 9, D. Conn. L. Civ. R.

### Conclusion

Accordingly, Plaintiffs' Renewed Motion for Reconsideration and to Vacate the Judgment [**Doc. # 39**] is DENIED.

SO ORDERED.